GROVER L. COVINGTON, Chief Judge.
Defendants appeal the judgment of the trial court condemning them to pay $7,830.38, plus interest, attorney fees, and court costs, as solidary guarantors on a secured promissory note. They contend that because the sale of the security brought a sufficient sum to satisfy the debt at a private sale without appraisal, they are not liable for the deficiency left unpaid. The basis for this argument is that part of the funds were used to pay off debts they had not guaranteed. We agree and reverse the judgment.
Trial was had upon a joint stipulation of facts and evidence by the parties, who offered no testimony. The substance of their stipulation is reproduced here.
Defendants Dona L. Smith and Leonard Nelms were employees of EASI Laboratories, Inc., during 1981. The business of EASI Laboratories was to provide environmental laboratory services for the Greater Baton Rouge area, and it leased the necessary equipment from a sister entity, Aberation, Inc.-EASI Equipment Company d/b/a EASI Equipment Company, which was a partnership in commendam. The partnership’s components were a corporate general partner, Aberation, Inc., and two limited partners, Claude and Joe Penn.
The note in question was in return for a loan to finance equipment for EASI Equipment to lease to EASI Laboratories. It was executed on April 6, 1981, by the president of Aberation, Inc., Arthur Paine, on behalf of the partnership, in the amount of $120,000.00. The note was secured by a collateral chattel mortgage on the equipment to be purchased. In addition, defendants and two others not party to this suit had previously on March 31, 1981, each signed a continuing guaranty in consideration of loans made to EASI Equipment. Thus, the handnote was also secured by the guaranties.
When EASI Laboratories began having financial problems in September of 1981, its employees, including defendants, were placed on leave without pay. Therefore, defendants notified plaintiff City National Bank that they were terminating their continuing guaranties regarding prospective debts on October 27, 1981.
On March 11,1982, EASI Equipment borrowed $10,500.00 from plaintiff, and used this loan to make a payment on the April 6, 1981, handnote, which was in arrears.
In April, 1982, EASI Laboratories and EASI Equipment were both having serious financial problems, and both loans were delinquent. Therefore Arthur Paine, the president of EASI Equipment’s corporate general partner, attempted of find buyers for the scientific equipment so that the money from these sales could pay off debts to plaintiff. By letter dated April 25, 1982, Nelms advised City National Bank that he wished to be advised of any sale of equipment. With help from City National (the record is unclear on the extent of this help), a purchaser was found and a written offer for all the equipment was made by Rollins Environmental Services, conditioned upon certification from the manufacturers’ representatives that the equipment was in good operating condition. Two of the manufacturers, Hewlett-Packard and Perkin-El-mer, required substantial payments total- *894 ling $6,500.00 in order to examine and certify the equipment; therefore, two additional loans were made by City National to cover this cost: one for $6,000.00 on October 18, 1982, and one for $500.00 on November 29, 1982. However, these loans were made to Arthur Paine personally, rather than to either of the companies. It is undisputed that all of the money from these loans was used in payment of the expenses of certification.
Rollins purchased the equipment from EASI Equipment on November 29, 1982, for $120,000.00. There is no evidence in the record that the defendants were ever advised of, allowed to participate in, or consented to this private sale. On that same date, City National marked the chattel mortgage note paid and cancelled the chattel mortgage. Paine directed that $81,-847.36, of the proceeds be applied as follows:
April 6 handnote for $120,000.00 57,795.03 principal 12,204.97 interest
March 11 handnote for $10,500.00 10,500.00 principal 1,347.36 interest
This transaction satisfied the entire debt on the loan of March 11, 1982, for $10,-500.00, and left an unpaid principal balance of $47,133.84 on the loan of April 6, 1981, for $120,000.00.
Rollins had requested that $38,140.64 of the purchase price be retained until a specific piece of equipment, a mass spectrometer, was determined to be in working order. Once this determination was made, the $38,140.64 was applied to the remaining debts of EASI Equipment and Arthur Paine, at Paine’s request, in reverse order in which they had been incurred:
November 29, 1982, note for $500.00 plus interest
October 18, 1982, note for $6,000.00 plus interest
April 16, 1981, note for $120,000.00 plus interest.
The two smaller debts were satisfied, and a principal balance remained on the April 16 handnote of $15,660.75.
On January 17, 1983, plaintiff made a formal demand on EASI Equipment for the deficiency in the amount of $15,660.75, which responded, through Paine, that it was unable to pay the debt. Thereafter on January 31, 1983, demand was made upon the four personal guarantors for the deficiency. Two of them, Arthur Paine and another not a party to this suit, each arranged to pay one-fourth of the deficiency. The remainder, or $7,830.38, is the amount in dispute here.
Applicability of the Deficiency Judgment Act
Appellants argue that the Deficiency Judgment Act, LA.R.S. 13:4106 and 4107, protects them as sureties and bars a deficiency judgment since the sale of the mortgaged equipment took place without an appraisal, even though it was a private sale. Section 4106 provides in pertinent part as follows:
If a mortgagee or other creditor takes advantage of a waiver of appraisement of his property, movable, immovable, or both, by a debtor, and the proceeds of the judicial sale thereof are insufficient to satisfy the debt for which the property was sold, the debt nevertheless shall stand fully satisfied and discharged insofar as it constitutes a personal obligation of the debtor. The mortgagee or other creditor shall not have a right thereafter to proceed against the debtor or any of his other property for such deficiency, except as provided in the next paragraph.
Section 4107 then states:
R.S. 13:4106 declares a public policy and the provisions thereof can not, and shall not be waived by a debtor, but it shall only apply to mortgages, contracts, debts or other obligations made, or arising on or after August 1, 1934.
The jurisprudence on when failure to comply with the Louisiana Deficiency Judgment Act will extinguish the obligation of a surety is set forth in University Properties Corporation v. Fidelity National Bank of Baton Rouge, 500 So.2d 888 (La.App. 1st Cir.1986) and is incorporated herein by reference. In the instant case, there was a private sale of the encumbered prop *895 erty without appraisal and without the consent of the sureties herein. Under the jurisprudence, this action by the creditor has extinguished the obligations of these two sureties.
For these reasons, we reverse the judgment of the trial court and dismiss plaintiffs case. All costs of this appeal are assessed to plaintiff-appellee.
REVERSED AND RENDERED.